IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X

In re:

Boston Property Exchange Transfer Company, Inc.,     Chapter 11

Debtor.     Case No.: 04-12792 (NFW)

------------------------------------------------------------X

### APPLICATION OF DEBTOR FOR AN ORDER UNDER BANKRUPTCY CODE SECTION 327(e) AND BANKRUPTCY RULE 2014(a) APPROVING THE EMPLOYMENT AND RETENTION OF AXINN, VELTROP & HARKRIDER LLP AS SPECIAL LITIGATION COUNSEL TO THE DEBTOR

Boston Property Exchange Transfer Company, Inc. ("BPETCO" or the "Debtor"), hereby applies to this Court (the "Application") for an order authorizing the Debtor to retain Axinn, Veltrop & Harkrider LLP ("AVH") pursuant to section 327(e) of chapter 11, of title 11, of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as its special litigation counsel in this chapter 11 case, and in support thereof respectfully represent as follows:

### INTRODUCTION

1. On October 1, 2004 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the clerk of this Court. The Debtor has continued in the management and operation of its business and property as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or official committee has been appointed in this case.

1

CTDOCS:12671.1

## JURISDICTION AND STATUTORY PREDICATES

2. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157. Venue of this proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are §§ 327(e), 328, 329, 504 and 1107(b) of the Bankruptcy Code and Rules 2014(a) and 2016(b) of the Bankruptcy Rules.

## BACKGROUND

*BPETCO'S Business*

3. From its inception in 1998 through January 2001, the Debtor's sole business was acting as a "qualified intermediary" for deferred like-kind property exchanges consummated by real estate investors pursuant to 26 U.S.C. § 1031. Like-kind exchanges allow real estate investors to defer the capital gains tax that would otherwise be due and owing upon the sale of certain real estate properties. In order to qualify for this favorable tax treatment, a party must sell investment property (the "relinquished property"), cause the proceeds from the sale to be transferred to and held by a "qualified intermediary" such as BPETCO, and then purchase a "replacement property" with the sales proceeds of the relinquished property within 180 days.

4. To that end, numerous professional real estate developers and/or investors (a/k/a "exchangors") caused the proceeds of one or more sales of real estate or property to be transferred to BPETCO and executed various agreements with BPETCO regarding these exchanges. Under these various agreements, BPETCO agreed to invest the

exchangors' funds at Merrill Lynch or PaineWebber until the time came to pay for the replacement properties. The exchangors agreed that all cash proceeds transferred to BPETCO were to be invested in accounts at Merrill Lynch or PaineWebber and invested "at the discretion" of BPETCO.

5. From its inception in 1998 until it ceased operations in January 2001, BPETCO successfully invested the exchangors' funds in the stock market (stock options). However, due to the substantial market downturn in late 2000, BPETCO lost $8.7 million of certain exchangors' funds during a two-week period. Although BPETCO successfully completed about $100 million in property exchanges for 120 different exchangors during the time it engaged in operations, BPETCO unfortunately lost $8.7 million of certain exchangors' funds in the stock market in December 2000/January 2001. BPETCO ceased operations shortly thereafter.

### *The Massachusetts Litigation*

6. Beginning in early 2001, the handful of exchangors whose funds had been lost filed various actions against BPETCO, its officers and directors, PaineWebber, Merrill Lynch, and others in Massachusetts state court. All of the various claims, in essence, alleged that BPETCO and the other defendants were liable for the loss of the funds. By the summer of 2001, all of the various actions were procedurally consolidated for trial.

7. On December 11, 2002, after a three-week trial, the jury returned an $8.7 million verdict, jointly and severally, against Merrill Lynch, BPETCO, certain of BPETCO's officers and directors, and various other defendants.[1] On or about February

---

[1] Prior to trial, the court granted PaineWebber's motion for summary judgment. However, that motion was granted solely with respect to the *exchangors'* claims against

3

25, 2003, the trial court granted Merrill Lynch's motion for judgment notwithstanding the verdict. However, on August 26, 2004, after various post-trial motions and evidentiary hearings regarding allegedly newly-discovered evidence, the trial court granted the exchangors a new trial against Merrill Lynch. Unfortunately, however, the trial court denied BPETCO and other defendants' motion for a new trial. The trial court set a new trial date for the exchangors' claims against Merrill Lynch for early February 2005.

8. Both BPETCO and Merrill Lynch have sought interlocutory review of the trial court's decisions in the Massachusetts Appeals Court. However, it is unclear whether and/or when any such relief may be forthcoming.

### RELIEF REQUESTED

9. The Debtor, pursuant to 11 U.S.C. § 327(e), seeks to obtain this Court's approval to retain AVH as its special litigation counsel in this chapter 11 proceeding.

10. The Debtor has selected AVH as its special litigation counsel because of AVH's extensive experience in having represented BPETCO in the Massachusetts litigation and its detailed knowledge of the facts and underlying causes of action involving not only the Massachusetts litigation but BPETCO's claims against third parties arising therefrom. In addition, AVH and/or the partner-in-charge of the matter (Richard S. Order, Esq.) have represented the Debtor since January 2001 in connection with the Massachusetts litigation and other related significant matters. As a result of AVH's prior and current representation of the Debtor, AVH has become knowledgeable about the Debtor, its former business, legal claims and defenses.

---

PaineWebber, not BPETCO's claims, which the court had previously stayed in favor of arbitration at PaineWebber's request.

11. AVH will coordinate with any other professionals retained by the Debtor in order to minimize unnecessary duplication of effort.

12. Subject to the Court's approval, AVH will charge the Debtor for its legal services on an hourly basis in accordance with its ordinary and customary rates in similar matters for similar clients in effect on the date services are rendered. AVH's hourly rates are usually adjusted effective January 1 of each year. Set forth below are the current hourly rates that AVH intends to charge the Debtor for the legal services of its professionals it presently contemplates utilizing:

| | |
|---|---|
| Partner | $375 |
| Associates | Between $200 and $315 |
| Paralegals | Between $125 and $150 |

13. The Debtor believes that AVH's hourly rates are reasonable based upon its capabilities and experience. In addition, AVH charges for out-of-pocket expenses, including, but not limited to, travel (transportation, lodging, and meals), telecopier, document duplication, scanning, postage, overnight shipping, transcripts, computerized legal research, overtime, and courier expenses.

14. AVH will make periodic applications to this Court for interim compensation in accordance with 11 U.S.C. §§ 328 and 331, and any orders of this Court governing such matters.

15. To the best of the Debtor's knowledge, and except as disclosed herein and in the affidavit of Richard S. Order, Esq. (the "Affidavit"), AVH and its attorneys and other professionals have no relationship to the Debtor or to any other party-in-interest in this case. The Affidavit is attached hereto as Exhibit A.

16. In the Affidavit, AVH has represented that it neither holds nor represents any interest adverse to the Debtor's estate, and that AVH is a "disinterested person," as that term is used in 11 U.S.C. § 327(e) and is defined in 11 U.S.C. § 101(14), relative to this case.

17. AVH will continue to inquire into any matters that would affect its disinterested status and will file a supplemental affidavit if necessary.

18. For the foregoing reasons, the Debtor believes that the retention of AVH as special counsel is in the best interests of the Debtor, its creditors, and its estate, and, therefore, the Debtor desires to retain AVH as its special counsel, with compensation to be determined upon application to this Court.

**NOTICE, WAIVER OF MEMORANDUM OF LAW AND PRIOR APPLICATION**

19. The Debtor has given notice of this Application to the Office of the United States Trustee and the Debtor's twenty largest unsecured creditors. The Debtor submits that the foregoing constitutes good and sufficient notice and that no other or further notice need be given.

20. The Debtor submits that this Application does not present any novel issues of law requiring briefing. Therefore, the Debtor respectfully requests that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, which is made applicable to this case by Rule 1001-1(b) of the Local Rules.

21. No previous request for the relief sought herein has been made to this or any other court.

**WHEREFORE** the Debtor respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: September 30, 2004

Boston Property Exchange Transfer Company, Inc.

By: *[signature]*
Jack E. Robinson, Esq.
Chief Restructuring Officer

CTDOCS:12671.1